# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

JULIE CARR-DAVIS, as surviving spouse   :
and administratrix of the ESTATE OF
RALPH R. CARR,                         :

                Plaintiff,       :

    v.                            :

BRISTOL-MYERS SQUIBB CO., et al.,  :

              Defendants.     :
_____:

Civil Action No. 07-1098 (FLW)

**OPINION**

## WOLFSON, District Judge:

This matter comes before the Court on a motion to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure brought by defendants Bristol Myers-Squibb Company, Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis U.S., Inc., and Sanofi-Synthelabo, Inc., (collectively, "Defendants"). Plaintiff Julie Carr-Davis ("Plaintiff"), as surviving spouse and administratrix of the Estate of Ralph R. Carr ("Decedent"), brings the instant suit on behalf of Decedent against Defendants because she alleges that Decedent suffered injuries as a result of Defendants' unlawful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and sale of the prescription drug Plavix. In that respect, Plaintiff's First Amended Complaint ("Amended Complaint") asserts various Missouri state and common law claims against Defendants. In the present matter, Defendants move to dismiss Count V, i.e., negligent misrepresentation claim and Count VI, i.e., fraud claim pursuant to the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010, et seq. For the reasons that follow, Plaintiff's negligent misrepresentation claim is dismissed without prejudice and the motion to

dismiss as to the fraud claim is denied.

## BACKGROUND FACTS

**I.      Procedural History**

On March 8, 2007, Plaintiff, a Missouri resident, filed a Complaint against Defendants asserting claims under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, et seq., the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq., the New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, et seq., the New Jersey Uniform Commercial Code, N.J.S.A. 12A:2-313, and the common law of the State of New Jersey, invoking this Court's diversity jurisdiction.  (March 8, 2007 Complaint ¶¶ 6-8.) Plaintiff is one of the individual claimants[1] that lodged separate complaints[2] against Defendants in this district between October 2006 and March 2007, invoking this Court's diversity jurisdiction and asserting similar claims under New Jersey law based upon injuries allegedly suffered as a result of Defendants' alleged negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distributing, labeling and/or the sale of Plavix.  Id.  A brief recitation of the procedural history in the related matters is necessary to a full understanding of the prolonged procedural history in this matter.

In January 2007, prior to the filing of the instant action, Defendants filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in the matters of Hall v. Bristol-Myers Squibb, No. 06-CV-5203 (hereinafter, "Hall"), and Skilstaff v. Bristol-Myers Squibb, No. 06-CV-4965 (hereinafter,

---

[1]      Initially, claims were filed in twenty-four individual cases, however, a Michigan plaintiff in the matter of Felmlee v. Bristol-Myers Squibb Co., No. 06-6240, voluntarily dismissed her claim in February, 2008.

[2]      A number of the twenty-three claimants were joined in their actions by spouses asserting claims of loss of consortium.

2

"Skilstaff")[3], and indicated their intention to file similar motions in the other Plavix cases pending before this Court.  In March 2007, this Court, without objection from the parties, administratively terminated Defendants' motions in Hall and Skilstaff having determined that two cases then pending before the New Jersey Supreme Court addressed the central issues to be decided by this Court on Defendants' motions to dismiss.  The parties further agreed that all Plavix cases filed in this district be held in abeyance.  Following the issuance of the New Jersey Supreme Court's decisions in Rowe v. Hoffman-LaRoche, 189 N.J. 615 (2007), and International Union of Operating Engineers, Local #68 v. Merck, 192 N.J. 372 (2007), the plaintiff in Skilstaff voluntarily dismissed the action and this Court granted Defendants' request to file a single omnibus motion to dismiss applicable to all personal injury Plavix lawsuits then pending in this district.

One of the main issues to be determined by this Court in the omnibus motion was the federal preemption of the plaintiffs' individual state law claims.  In February 2008, however, in light of the fact that the Third Circuit had pending two separate cases, Colacicco v. Apotex, Inc., and McNellis ex. rel. DeAngelis v. Pfizer, Inc., on its docket regarding substantially similar preemption issues, as did the United States Supreme Court, Levine v. Wyeth, this Court administratively terminated the personal injury Plavix cases pending in this district and permitted plaintiffs to re-file amended complaints in the event there were viable claims after the decisions from the Higher Courts.  Following the issuance of the Supreme Court's decision in Levine v. Wyeth, __ U.S. __, 129 S.Ct. 1187, 173 L.Ed. 2d 51 (2009), this Court reinstated the closed cases and, on May 1, 2009, each of

---

[3]      The plaintiff in the matter of Skilstaff v. Bristol-Myers Squibb, is not among the twenty-three individual claimants seeking damages for personal injuries, rather Skilstaff was an Alabama third-party payor seeking certification of a class of third-party payors for violations of the New Jersey Consumer Fraud Act.

3

the plaintiffs filed an amended complaint.  In the amended complaints, each individual plaintiff brought claims under the laws of the states in which they reside, rather than New Jersey, as originally plead.  Thereafter, Defendants moved to dismiss certain counts of the amended complaint filed by each individual plaintiff.  It is the Defendants' motion to dismiss Counts V and VI with regard to this Plaintiff that this Court now considers.

**II.     Factual Background**

The following version of events assumes Plaintiff's allegations in the Amended Complaint to be true because Defendants move pursuant to <u>Fed. Civ. R. P.</u> 12(b)(6).  The Court will recount only those facts relevant to this Motion.

Sanofi-Aventis U.S., L.L.C., Sanofi-Aventis U.S., Inc., and Sanofi-Synthelabo, Inc. (collectively, the "Sanofi Defendants") partnered with Bristol-Myers Squibb Company ("BMS") to manufacture and market Plavix in the United States.  <u>See</u> Amended Complaint ("Am. Compl."), ¶¶ 2-5.  In April 1997, the Sanofi Defendants and BMS applied for a rare, priority regulatory review by the Food and Drug Administration ("FDA") clearing the way for Defendants to bring Plavix to market in November 1997.  <u>Id.</u>, ¶ 11.  According to Plaintiff, Defendants heavily marketed Plavix directly to consumers through television, magazine, and internet advertising, falsely touting Plavix "as a 'super-aspirin' that would give a person even greater cardiovascular benefits than a much less expensive, daily aspirin, while being safer and easier on a person's stomach than aspirin."  <u>Id.</u>, ¶ 13. Plaintiff alleges that Defendants either knew or should have known, based upon their own studies, that not only was Plavix not more efficacious than aspirin in terms of preventing heart attacks and strokes, the risk of suffering a heart attack, stroke, internal bleeding, blood disorder or death far outweighed any benefit from the drug.  <u>Id.</u>, ¶ 14.

4

As evidence that Defendants were indeed aware of their false and misleading promotion of Plavix, Plaintiff points to a November 1998 letter from the FDA wherein the FDA instructed Defendants to cease promoting Plavix for off-label use in patients undergoing coronary artery stent placement.[4]  Id., ¶ 18.  Plaintiff also points to the same FDA reprimand wherein Defendants were instructed to cease promoting Plavix at an off-label dose, which was nearly four (4) times that of the recommended dosage.  Id., ¶ 18.  In addition to criticizing Defendants for promoting Plavix for unapproved use, the FDA also criticized Defendants for overstating the safety profile of Plavix with respect to its use with other drugs.  Id., ¶ 19.  In particular, Plaintiff points to the fact that Defendants touted the safety of Plavix when combined with aspirin (known as "dual therapy") when, in fact, its safety had not been established.  Id.  According to Plaintiff, Defendants' claim regarding the safety of dual therapy has now been proven to be untrue in a recent study published in the New England Journal of Medicine in April 2006 entitled Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance (the "CHARISMA Study"[5]).  Id.

As further evidence of Defendants' allegedly false and misleading promotional practices, Plaintiff points to a December 1998 letter from the FDA, wherein the FDA demanded that Defendants cease the distribution of advertising materials that claimed that Plavix has been proven to be more effective than aspirin.  Id., ¶ 20.  The FDA criticized Defendants' materials as an overstatement of efficacy, which was unsubstantiated and lacking in fair balance.  Id.  Again in 2001,

---

[4]    As discussed more fully infra, the Court will consider the extrinsic documents referenced in the FAC as they were explicitly relied upon by Plaintiff in the FAC.

[5]    The CHARISMA Study derives its name from the Clopidogrel for High Atherothrombotic Risk and Ischemic Stabilization, Management, and Avoidance trial, which was the subject of the article.

the FDA ordered Defendants to immediately cease distribution of promotional material that made false or misleading claims about Plavix.  Id., ¶ 21.  Specifically, the FDA noted that the clinical evidence of the efficacy of Plavix is derived from Defendants' study entitled Clopidogrel versus Aspirin in Patients at Risk of Ischemic Events Trial (the "CAPRIE Study").  Id.  Defendants' promotional material depicted a 19.2% relative risk reduction for Plavix versus aspirin, yet the actual findings of the CAPRIE Study were that Plavix was not proven to be significantly more effective than aspirin.  Id.  Additionally, the FDA again instructed Defendants to cease claiming that the use of Plavix combined with aspirin was safe and effective.  Id.

According to Plaintiff, in addition to misinforming physicians and consumers through false and misleading promotional materials and advertising, Defendants' drug representatives also misinformed physicians regarding the proper types of patients who should be prescribed Plavix, the duration of its proper usage and the applications for which Plavix is safe and FDA approved.  Id., ¶ 22.  Specifically, Plaintiff points to the fact that the drug representatives have encouraged physicians to prescribe Plavix to a broad population who would receive the same therapeutic benefit from aspirin alone, without the purported risk of death, and to use Plavix for unapproved applications.  Id., ¶ 23.

Plaintiff alleges that after a nearly eight-year run of misleading physicians and the public regarding the safety and efficacy of Plavix, scientific studies now reveal that Plavix is in fact dangerous.  Id., ¶ 25.  Citing a study published in The New England Journal of Medicine in January 2005, entitled Clopidogrel versus Aspirin and Esomeprazole to Prevent Recurrent Ulcer Bleeding (the "Chan Study"), Plaintiff notes the dangers of Plavix.  Specifically, Plaintiff contends that the Chan Study demonstrates the fallacy of Defendants' assertions that Plavix is safer and more effective

for patients suffering from gastrointestinal intolerance to aspirin.  Id., ¶ 26.  Plaintiff points out that the Chan Study recommended that prescribing guidelines for Plavix be changed so that patients would not erroneously believe that Plavix is safer on the stomach than aspirin, in light of the Study's findings that recurring stomach bleeding was 8.6% in the Plavix group versus only .7% in the aspirin group.  Id.  Plaintiff additionally points to the Chan Study's finding that an aspirin a day plus esomeprazole (the generic name for an inexpensive over-the-counter proton pump inhibitor such as Prilosec) is far more cost effective than paying for the four-dollar per day Plavix pill, which greatly increases the risk of stomach bleeding.  Id., ¶27.  Finally, citing the CHARISMA Study, Plaintiff contends that Plavix plus aspirin ("dual therapy") is only minimally more effective than aspirin plus placebo at preventing atherothrombotic events, and more significantly, does more harm than good in those patients without peripheral arterial disease or acute coronary syndrome in that it poses a 20% increased risk to the patient of suffering bleeding injuries, heart attacks, stroke and death.  Id., ¶ 28.

Due to these alleged illegal practices, Plaintiff asserts, inter alia, a fraud claim pursuant to the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010, et seq. ("MMPA" or the "Act"), and Missouri state common law claim of negligent misrepresentation; these claims are the subject of this motion.  In connection with these two claims, Plaintiff alleges that Decedant "began taking Plavix in combination with to be taken in combination with aspirin – "dual therapy" – in May 2005, after he had bypass surgery . . . On or about September 22, 2005, he collapsed at home, having suffered a serious cerebral bleeding injury."  Due to this injury, Plaintiff further alleges that Decedent "remained on life support for several weeks but physicians were not able to save his life.  [Decedent] was pronounced dead on October 10, 2005."  Am Compl., ¶ 30.

As result of Decedent's death, Plaintiff, in Count VI of the Amended Complaint, alleges that

Defendants violated the MMPA by making "unfair and/or deceptive trade practices in the conduct

of any trade or commerce illegal, violation of the Merchandising Act, Mo. Ann. Stat. § 407.0120(1)."

Id., ¶ 98.  In that regard, Plaintiff avers that "Defendants' acts constitute unconscionable, deceptive,

or unfair acts or practices in violation of the Merchandising Act, " id., ¶ 101, because "Defendants

knew or should have known, that Plavix was unreasonably dangerous and defective, and had a

propensity to cause serious and potentially life threatening side effects." Id., ¶ 101.  Plaintiff further

alleges that "Defendants' statements and omissions were made with the intent that the Plaintiff's

decedent, and his prescribing physician, would rely on them."  Id., ¶ 106.  Consequently, "[a]s a

direct and proximate result of the Defendants' acts of consumer fraud, the Plaintiff's decedent died."

Id., ¶ 110.

        In similar fashion, Count V alleges that "Defendants falsely represented to Plaintiff and her

husband, in direct to consumer advertising and indirectly through misrepresentation to the

prescribing physician, that Plavix was safe and effective.  The representations by Defendants were

in fact false and Plavix was not safe and was in fact dangerous to Plaintiff's decedent's health." Id.,

¶ 77.  Plaintiff further alleges that "[a]t the time the representations were made, Defendants

concealed from Plaintiff's decedent and his prescribing physician information about the propensity

of Plavix to cause great harm," id., ¶ 78, and that "Defendants negligently misrepresented claims

regarding the safety and efficacy of Plavix despite the lack of information of the representations'

accuracy." Id., ¶ 79.  Due to these misrepresentations, Plaintiff alleges that Decedent suffered

injuries and his eventual death by taking Plavix. Id., ¶¶ 80, 86

        Now, Defendants move to dismiss Count V, the negligent misrepresentation claim, and

Count VI, the MMPA claim, of the Amended Complaint.  The Court will turn to address the

sufficiency of these claims.

## DISCUSSION

### I.      Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 561 (quoting Conley, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

In affirming that Twombly standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).[6] "Second,

only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.

Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint

has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

      Before reaching the merits of Plaintiff's claims, there is a threshold procedural question as

to the documents and exhibits this Court may consider on this motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(6). As previously referenced in this Court's discussion of the Factual Background,

Plaintiff supplies this Court with several exhibits, including: (1) a December 1998 FDA letter

addressed to Sanofi Pharmaceuticals, Inc.; (2) a copy of the CHARISMA Study; (3) a November

1998 FDA letter addressed to Sanofi Pharmaceuticals, Inc.; (4) a May 2001 FDA letter addressed

to Sanofi-Synthelabo Inc.; (5) the Chan Study; and (6) a Mediation Letter dated March 12, 2009.

Additionally, the Defendants provide the Court with the November 17, 1997 approval letter for

Plavix. While generally a court may not consider matters outside the pleadings when ruling on a

motion to dismiss, documents that are "integral to or explicitly relied upon in the complaint" may

indeed be considered without converting a motion to dismiss into a motion for summary judgment.

In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir.1999) (emphasis and

_____

[6]     The Court notes that because the briefing in this matter was filed shortly after the
United States Supreme Court's decision in Ashcroft, counsel for Defendants moved for leave to
file supplemental briefing addressing the standard of review applicable to the instant motion.
This Court found additional briefing unnecessary and, accordingly, denied Defendants' request.

citations omitted).   Accordingly, the referenced exhibits are properly before the Court on the instant motion to dismiss.

## II.      The MMPA Claim

Plaintiff maintains that Rule 9(b)'s heightened pleading standard does not apply to the MMPA, and that even if it did, the Amended Complaint alleges facts with sufficient particularity under Rule 9(b).  On the other hand, citing numerous federal court decisions involving the MMPA, Defendants retort that Plaintiff's MMPA claim arising under fraudulent conduct must comply with the strictures of Rule 9(b).  In that connection, Defendant claims that Plaintiff's MMPA claim should be dismissed because she fails to allege with particularity that Decedent, or his prescribing physician, relied on Defendants' misrepresentation in taking, or prescribing, Plavix.  Moreover, Defendants argue that Plaintiff fails to plead how these misrepresentations affected Decedent's prescription for Plavix and how these false statements caused any of his injuries.  Having reviewed Missouri cases in this context, the Court need not address whether Rule 9(b) applies to Plaintiff's MMPA claim because under the Act, to sustain a fraud claim, Plaintiff need not plead the element of reliance or that Defendants' misrepresentations caused Decedent to take Plavix.  Accordingly, Plaintiff has sufficiently plead a claim under the MMPA.

The MMPA was "enacted to preserve fundamental honesty, fair play, and right dealings in public transactions." <u>Scott v. Blue Springs Ford Sales, Inc.</u>, 215 S.W.3d 145, 160 (Mo. Ct. App. 2006).  It provides:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the

11

> seller or lessor resides or in which the transaction complained of took place, to
> recover actual damages.

Mo. Rev. Stat. § 407.025.1.  Thus, to successfully present an MMPA claim, Plaintiff must plead that

Decedent purchased personal merchandise and that he suffered an ascertainable loss as a result of

the methods or practices declared unlawful by Section 407.020. See Owen v. GMC, 533 F.3d 913,

922 (8th Cir. 2008).

Those unlawful acts include "any deception, fraud, false pretense, false promise,

misrepresentation, unfair practice or the concealment, suppression or omission of any material fact

in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev.

Stat. § 407.020.1.  While the MMPA does not specifically define deceptive or unfair practices, it

"simply declares unfair or deceptive practices unlawful" in order to "give broad scope to the meaning

of the statute and to prevent evasion because of overly meticulous definitions."  Owen, 533 F.3d at

922 (quoting State ex rel. Webster v. Areaco Inv. Co., 756 S.W.2d 633, 635 (Mo. Ct. App. 1988)).

The statute provides that a deceptive practice violates the MMPA regardless of whether the act was

"committed before, during or after the sale, advertisement or solicitation," Mo. Rev. Stat. §

407.020.1, and it is not necessary to prove the elements of common law fraud in order to establish

an unlawful practice.  State ex rel. Webster, 756 S.W.2d at 635.  As a supplement to common-law

fraud, the MMPA eliminates "the need to prove an intent to defraud or reliance."  Plubell v. Merck

& Co., Inc., 289 S.W.3d 707, 713-14 (Mo. Ct. App. 2009); see also Clement v. St. Charles Nissan,

Inc., 103 S.W.3d 898, 899 (Mo. Ct. App. 2003).

Recently, the Missouri Appellate Court in Plubell interpreted the MMPA in the context of

a pharmaceutical consumer fraud action.  In Plubell, the plaintiffs, who took the prescription drug

12

Vioxx, alleged that defendant-manufacturer Merck engaged in unlawful practices by failing to disclose, and actively concealing, Vioxx's risks.  Plubell, 289 S.W.3d at 711.  Plaintiffs reasoned that Merck knew about the risks of the drug by alleging that certain studies demonstrated that Vioxx was likely to increase risks of heart attack, hypertension, and stroke.  Id.  Moreover, the plaintiffs alleged that FDA had issued "Warning Letters" to Merck objecting to its promotional materials and representations of Vioxx's risks.  Id.  Despite the knowledge and the warnings, the plaintiffs alleged that Merck continued to market Vioxx without disclosing the risks.  Id.

Merck claimed that the plaintiffs had failed to allege an ascertainable loss or that Merck had caused any ascertainable loss.  The appellate court disagreed.  Citing the broad remedial purpose of the MMPA, the court held that the MMPA does not require allegations of Merck's knowledge because the statute "does not put forth a scienter requirement for civil liability: 'It is the defendant's conduct, not his intent which determines whether a violation has occurred'."  Id. at 713 (citations omitted).  The court also held that an MMPA violation can occur regardless of whether the unlawful practice is committed "before during or after the sale."  Id. at 714.  More importantly, "each physician's and consumer's reliance on the misrepresentation is not required," id., and thus, the plaintiffs "are not required to [allege] [that] they or their physicians relied on Merck's alleged misrepresentations about Vioxx, and consequently, they are not required to offer . . . proof that the misrepresentation colored the decision to take Vioxx."  Id.

Finally, and perhaps most damaging to Defendants' position here, the court there rejected a similar argument made in this case by Defendants regarding causation.  In that case, Merck argued that to sustain a claim under the MMPA, the plaintiffs must show that they would not have used Vioxx had the risks been known and therefore, the plaintiffs failed to connect the alleged false

statements to their injuries.  Explicitly rejecting Merck's position, the court explained:

> The MMPA does not require that an unlawful practice cause a "purchase." A civil suit may be brought by "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of [an unlawful practice]." § 407.025. "[A]s a result of" modifies "ascertainable loss"; it does not modify "purchases or leases." Thus, a plaintiff's loss should be a result of the defendant's unlawful practice, but the statute does not require that the purchase be caused by the unlawful practice.

Id. at 714.  This line of reasoning was echoed by the Eighth Circuit in Owen.  The Owen court remarked that while causation is a necessary element of a MMPA claim, the ascertainable loss must result from the alleged unlawful conduct.  Owen, 533 F.3d at 922.

Here, Plaintiff has sufficiently pled the elements of her MMPA claim.  To support Plaintiff's MMPA claim, she alleges that "Defendants made unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal, in violation of the Merchandising Act . . . ." Am. Compl., ¶ 97.  Plaintiff further avers that "Defendants made deceptive, fraudulent, false, misleading, misrepresentative statements and/or advertisements in trade, or commerce, in violation of the Merchandising Act . . . ."  Id., ¶ 98.  In that regard, citing to FDA warning letters and various scientific studies, Plaintiff claims that "Defendants knew or should have known, that Plavix was unreasonably dangerous and defective, and had a propensity to cause serious and potentially life threatening side effects," id., ¶ 102, but "[d]espite their knowledge, the Defendants omitted material facts in the disclosures they made to the public, the medical community and to consumers, including the Plaintiff's decedent, concerning the use and safety of Plavix."  Id., ¶ 103.  As a result of the unlawful conduct, Plaintiff alleges that Decedent "suffered ascertainable economic loss that includes the purchases of Plavix and additional out-of-pocket healthcare related costs, for which the

14

Defendants are liable to the Plaintiff for treble Plaintiff's actual damages." <u>Id.</u>, ¶ 109.  As part of her ascertainable loss, Plaintiff also seeks compensation for Decedent's death and his pain and suffering. <u>Id.</u>, ¶¶ 110, 111.

Juxtaposing the allegations set forth in this case and of those in <u>Plubell</u>, the Court is satisfied that Plaintiff has sufficiently pled a claim under the MMPA.  Defendants argue that Plaintiff's Amended Complaint fails to specify the alleged false representations at issue and fails to identify any specific advertisements Decedent viewed, how he was misled by these advertisements, how these advertisements affected his prescription for Plavix, and how these advertisements caused any of his injuries.  In sum, Defendants argue that Plaintiff has failed to allege any specific facts establishing a connection between the alleged conduct of any of the Defendants and the alleged injury claimed. The Court disagrees.  As discussed above at length, in order for Plaintiff to sufficiently allege a MMPA claim, she need not pled reliance, intent or that Defendants' false statements caused Decedent to purchase Plavix.  Rather, it is sufficient that Plaintiff pled that Defendants' unlawful conduct under the MMPA, i.e., deceptive, fraudulent, false and misleading promotion of Plavix, caused Decedent to suffer an ascertainable loss.

### III.    Negligent Misrepresentation

The Court notes at the outset that Plaintiff does not dispute that she must plead with particularity pursuant to Rule 9(b) with respect to her Negligent Misrepresentation claim.  Indeed, courts in Missouri have required compliance with Rule 9(b) when asserting a negligent misrepresentation claim.  <u>See</u> <u>In re Express Scripts, Inc., Pharmacy Benefits Management Litig.</u>, No. MDL 1672, 2007 WL 1796224, at *13 (E.D. Mo. Jun. 20, 2007); <u>Leonard v. BASF Corp.</u>, No. 06-89734, 2006 U.S. Dist. LEXIS 89734, at *17-19 (E.D. Mo. Dec. 16, 2006); <u>Morris v. Novastar</u>

15

Mortg., No. 05-791, 2006 U.S. Dist. LEXIS 67015, at *(18-19 Sep. 19, 2006); but see In re Marion Merrell Dow, Sec. Litig., No. 92-609, 1993 U.S. Dist. LEXIS 14197, at *44 (W.D. Mo. Oct. 4, 1993)(relying on out-of-circuit cases, the court held that a plaintiff need not plead claims of negligent misrepresentation with particularity).

Neither party disputes that in Missouri, to state a claim for negligent misrepresentation, a plaintiff must plead facts that establish: (1) that the speaker supplied information in the course of his business or some other pecuniary business; (2) that, due to the speaker's failure to exercise reasonable care of competence in obtaining or communicating information, the information was false; (3) that the speaker intentionally provided information for the guidance of a limited group of persons in a particular transaction; (4) that the listener justifiably relied on the information; and (5) that as a result of the listener's reliance on the information, he suffered pecuniary loss. Wellcraft Marine v. Lyell, 960 S.W.2d 542, 546 (Mo. Ct. App. 1998).

Here, in order to support her negligent misrepresentation claim, Plaintiff alleges that "Defendants falsely represented to Plaintiff and her husband, in direct to consumer advertising and indirectly through misrepresentation to the prescribing physician, that Plavix was safe and effective. The representations by Defendants were in fact false and Plavix was not safe and was in fact dangerous to Plaintiff's health." Am. Compl., ¶ 77. Plaintiff further alleges that "[a]t the time the aforesaid representations were made, Defendants concealed from Plaintiff and his prescribing physician information about the propensity of Plavix to cause great harm," id., ¶ 88, and that "Defendants negligently misrepresented claims regarding the safety and efficacy of Plavix despite the lack of information of the representations' accuracy." Id., ¶ 79. Plaintiff also points to allegations in ¶¶ 19-22, 27 and 29-30 of the Amended Complaint to substantiate her claim here.

16

In particular, Plaintiff states (1) that she has alleged who made the misleading statements - Defendants; (2) that she has alleged what was misleading about Defendants' statements - Defendants advertised Plavix as safe and effective in "dual therapy" treatments, off-label use, and more effective than aspirin; (3) that she has alleged that Defendants' statements were known to be misleading or should have been known when made - multiple FDA warnings against deceptive advertising of Plavix's safety and use in certain treatments, as well as scientific studies, both internal and external, refuting Defendants' wrongful advertising of Plavix; (4) that she has alleged what Defendants' misrepresentations were - the safety and effectiveness of Plavix as advertised in the face of both FDA warnings to the contrary and numerous scientific studies; and (5) that she has alleged why Defendants' misrepresentations were misleading - concealment of the risks associated with the use of Plavix, promotion of the safe and beneficial use of Plavix for off-label use in patients receiving arterial stents, even though the FDA and scientific studies warned against such use.

Viewing the allegations in combination, Plaintiff has failed to allege with the requisite specificity to state a claim for negligent misrepresentation.  While Plaintiff may have arguably alleged with specificity elements one, two and three, Plaintiff fails to allege specific facts with respect to the fourth and fifth elements of the claim -  that the listener justifiably relied on the information and  that as a result of the listener's reliance on the information, she suffered pecuniary loss.  In this regard, Plaintiff's Negligent Misrepresentation claim fails to state a claim.  No plaintiff-specific facts were pled in connection with this claim.  The Amended Complaint fails to provide what specific misrepresentation were made to Plaintiff; when they were made to Plaintiff; the substance of the alleged misrepresentations; the name of Plaintiff's prescribing physician; the substance of the alleged misrepresentation made to Plaintiff's prescribing physician; and when the

17

false representation was made.  While the Court does not suggest that Plaintiff must plead every single fact listed above, Plaintiff simply does not state with the requisite particularity the circumstances of the alleged fraud or otherwise inject precision into her allegations of how she relied upon Defendants' misrepresentations in connection with her taking the prescription drug Plavix.  See In re Schering-Plough, 2009 U.S. Dist. LEXIS 58900 at *117-119.

In fact, the deficiencies of Plaintiff's Amended Complaint in this context were recently discussed by the court in In re Schering-Plough Corp. Intron/Temodar Consumer Class Action, No. 06-5774, 2009 U.S. Dist. LEXIS 58900 (D.N.J. Jul. 10, 2009) (Chesler, J.)  In that case, plaintiffs filed a class action complaint alleging, inter alia, that defendants "engaged in improper and illegal off-label promotion of Intron-A, PEG-Intron, Rebetol and Temodar."  Id. at *6.  Plaintiffs further alleged that defendants "orchestrated a campaign to illegally market and promote the Subject Drugs for off label uses . . . and, as a result, Plaintiffs paid for drugs at an inflated price or for drugs that they would not have purchased but for the illicit marketing scheme."  Id. at *7.  Similar to Defendants' response here, the defendants there filed a motion to dismiss, among other claims, plaintiffs' fraud and negligent misrepresentation claims.

In dismissing these two specific claims, the court, in a well-reasoned opinion, found that plaintiffs made "sweeping allegations" regarding defendants' alleged promotion, yet they did not plead a single instance in which they, themselves, or any of their prescribing doctors received a misrepresentation of fact on which they relied upon in either taking or prescribing any of the subject drugs.  Id. at *117.  In addition, the court explained that plaintiffs' common law fraud and negligent misrepresentation claims also failed to state a claim because plaintiffs did not allege a causal connection between their injury and defendants' conduct.  Id. at *119.  While In re Schering-Plough

dealt with New Jersey's common law claims, the same reasoning applies here since the theory of that case parallels the instant action. Accordingly, Plaintiff's Negligent Misrepresentation claim is dismissed without prejudice.

## CONCLUSION

Based upon the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The motion is denied as to Count VI, i.e., fraud claim pursuant to the MMPA, of the Amended Complaint. However, Count V, i.e., negligent misrepresentation claim, is dismissed without prejudice. Plaintiff may file a motion to amend the Complaint as to Count V if she intends to pursue the claim and can cure the deficiencies outlined by the Court.

DATE:  December 30, 2009                              /s/ Freda L. Wolfson_____
                                                     The Honorable Freda L. Wolfson
                                                     United States District Judge

19